UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| NUFARM AMERICAS INC.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Court No. 25-00133 |

# COMPLAINT

Plaintiff, Nufarm Americas Inc. ("Nufarm") by and through its counsel, states the following claims against Defendant, the United States:

1.  Plaintiff seeks judicial review of the U.S. International Trade Commission's ("USITC" or "Commission") affirmative final material injury determination in the antidumping ("AD") and countervailing ("CVD") duty investigations of 2,4-Dichlorophenoxyacetic Acid ("2,4-D") from China and India.  This USITC determination was published in the *Federal Register* on May 22, 2025. *2,4-Dichlorophenoxyacetic Acid ("2,4-D Acid") From China and India,* 90 Fed. Reg. 21,946 (May 22, 2025). S*ee also 2,4-Dichlorophenoxyacetic Acid ("2,4-D") from China and India,* Inv. Nos. 701-TA-710-711 and 731-TA-1673-1674 (Final), USITC Pub. 5618 (May 2025) ("*Views and Final Report*").

2.	The U.S. Department of Commerce ("Commerce" or the "Department") published its notice of the antidumping and countervailing duty orders on 2,4-D from China and India a few days later. *See 2,4-Dichlorophenoxyacetic Acid From India and the People's Republic of China: Antidumping Duty Orders*, 90 Fed. Reg. 22,243 (Dept. Comm. May 27, 2025) ("*AD Orders*"); *2,4-Dichlorophenoxyacetic Acid From the People's Republic of China and India: Countervailing Duty Orders*, 90 Fed. Reg. 22,232 (Dept. Comm. May 27, 2025) ("*CVD Orders*").

## JURISDICTIONAL STATEMENT

3.	The Court has jurisdiction over this action pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (B)(i) to review a final affirmative determination made by the USITC under 19 U.S.C. § 1671d(b). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

## STANDING OF PLAINTIFF

4.	Nufarm is a U.S. importer of the subject merchandise.

5.	Plaintiff is, therefore, an interested party as defined in 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(A). Moreover, Plaintiff fully participated in the proceeding being challenged. Accordingly, Plaintiff has standing to bring this action under 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

6. The USITC published its affirmative final determination in the *Federal Register* on May 22, 2025. *See 2,4-Dichlorophenoxyacetic Acid ("2,4-D Acid") From China and India,* 90 Fed. Reg. 21,946 (May 22, 2025). On May 27, 2025, the Department's AD and CVD Orders were published in the *Federal Register*. *See AD Orders* and *CVD Orders*.

7. Plaintiff filed its Summons for this action on June 20, 2025. Therefore, Plaintiff commenced this action within the time period specified in 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and 28 U.S.C. § 2636(c).

8. In addition, Plaintiff is filing this Complaint within thirty days of filing the Summons. Therefore, Plaintiff has also complied with the deadline set forth in 19 U.S.C. § 1516a(a)(2)(A)(ii).

## STATEMENT OF FACTS

9. The underlying agency proceeding began in response to the submission petitions seeking the imposition of AD and CVD duties on imports of 2,4-D from China and India on March 14, 2024. *See 2,4- Dichlorophenoxyacetic Acid ("2,4-D Acid") from the People's Republic of China and India*, Petitions for the Imposition of Antidumping and Countervailing Duties, (Mar. 14, 2024).

10. On March 20, 2024, the USITC published its notice of institution for the preliminary investigation in the *Federal Register*. *See 2,4- Dichlorophenoxyacetic Acid ("2,4-D Acid") from China and India*; Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations, 89 Fed. Reg. 19,876 (Int'l Trade Comm'n Mar. 20. 2024).

11. On April 30, 2024, Commerce initiated its AD and CVD investigations. *See 2,4- Dichlorophenoxyacetic Acid From China and India*: Initiation of Less-Than Fair-Value Investigations, 88 Fed. Reg. 73,316 (Dept Comm. Apr. 30, 2024).

12. On May 24, 2024, the USITC rendered its affirmative preliminary injury determination, concluding that there was "reasonable indication that an industry in the United States is materially injured by reason of imports" of the subject products. *See 2,4- Dichlorophenoxyacetic Acid ("2,4-D Acid") from China and India*, 80 Fed. Reg. 45,923 (Int'l Trade Comm'n May 24, 2024).

13. On November 26, 2024, the USITC published its notice scheduling the final phase of the injury investigation. *See 2,4- Dichlorophenoxyacetic Acid ("2,4-D Acid") from China and India; Scheduling of the Final Phase of Antidumping and Countervailing Duty Investigations*, 89 Fed. Reg. 93,339 (Int'l Trade Comm'n Nov. 26, 2024). Subsequently, the USITC issued questionnaires to all known U.S. producers, U.S. importers, foreign producers and exporters and U.S. customers of 2,4-D. In addition, the USITC posted all of its questionnaires on its website.

14.     Based on these questionnaire responses and other information submitted to or obtained by the USITC, the USITC Staff issued its Pre-Hearing Report on March 19, 2025. This Pre-Hearing Report summarized the submitted data as of that point in time.

15.     Thereafter, all interested parties submitted pre-hearing briefs. Nufarm and Drexel Chemical Company submitted their combined pre-hearing brief on March 27, 2024.

16.     A public hearing was held on April 1, 2025. The hearing included testimony from a Nufarm official that provided sworn testimony on the real-world competitive dynamics involved in purchasing 2,4-D.

17.     During the hearing, Nufarm officials reiterated information and data that had previously been provided to the USITC demonstrating processors of 2,4-D acid conducted sufficient production-related activities to be considered part of the domestic industry and that there was limited head-to-head competition between the domestic like product and subject imports such that competition was attenuated.

18.     During the hearing, Nufarm also testified that Corteva Agriscience, Inc. ("Corteva") refused to sell the domestic like product to Nufarm; thereby, forcing Nufarm to import subject merchandise.

19.     After the hearing, the parties submitted post-hearing briefs. Nufarm submitted its post-hearing brief on April 8, 2025.

20.     The USITC Staff's Final Report (Staff Report) was issued on April 17, 2025. This Staff Report summarized the submitted data as of that point in time, revising

the *2,4- Dichlorophenoxyacetic Acid ("2,4-D Acid") from China and India; Staff Report, Inv. Nos. 701-TA-710-711 and 731-TA-1673-1674* (Apr. 17, 2025).

21. Thereafter, interested parties filed their final comments. Nufarm submitted its final comments on April 25, 2025.

22. On May 2, 2025, the USITC voted three to zero in the affirmative that the domestic 2,4-D industry was materially injured by reason of 2,4-D imports from China and India.

23. On May 16, 2025, the USITC rendered its conclusion that the domestic 2,4-D industry was materially injured by reason of 2,4-D imports from China and India. This USITC decision was published in the *Federal Register* on May 22, 2025.

24. The written views of the USITC, which include the USITC's rationale for its affirmative injury determinations, are set forth in the USITC's report. *See Views and Final Report*.

## STATEMENT OF CLAIMS

**Count One:** **The USITC's Decision To Exclude Nufarm From The Composition of The Relevant Domestic Industry Was Unsupported by Substantial Evidence and Was Otherwise Not In Accordance with Law**

25. Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 24.

26. The statutory framework requires the Commission to define a "domestic industry" at the outset of each investigation. 19 U.S.C. § 1677(4). The domestic industry is defined as the domestic "producers as whole of a domestic like product, or those producers whose collective output of a domestic like product constitutes a major

proportion of the total domestic production of the product." 19 U.S.C. § 1677(4)(A).

27. It was, and remains, undisputed that the definition of the applicable "like product" included 2,4-D salts and esters and, the precursor to both, 2,4-D acid.

28. During the underlying proceeding, Nufarm provided detailed and information and data demonstrating that, vis-à-vis its production of esters, (a) the level of capital investment needed to undertake esterification – the manufacturing process required to produce 2,4-D esters from 2,4-D acid – was significant; (b) the esterification process is complex and requires highly skilled workers in order to consistently yield the desired result; and (c) the value-added by the esterification process is significant.

29. Notwithstanding this evidence, the Commission determined that Nufarm and other 2,4-D processors did not have sufficient U.S. production activities to qualify as "U.S. producers" of the like product. *Views and Final Report* at 13-19. The Commission's primary basis for this conclusion was a relative comparison of the production efforts needed to produce 2,4-D acid, esters, and sales, as opposed to the production efforts needed to produce only 2,4-D esters and salts.

30. The Commission's exclusion of companies that only produced 2,4-D esters and salts from the domestic industry by applying the test on a relative basis resulted in the Commission's definition of the domestic industry being unsupported by substantial evidence and otherwise not in accordance with law. *Chemours Company FC, LLC v. United States*, 443 F. Supp. 3d 1315 (Ct. Int'l Trade 2020).

**Count Two:**       **The USITC's Conclusion Of Significant Adverse Volume Effects Was Unsupported by Substantial Evidence and Otherwise Not In Accordance With Law**

31. Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 30.

32. Pursuant to 19 U.S.C. § 1677(7)(C)(i), the Commission is directed to "consider whether the volume of imports of the merchandise, or any increase in that volume, either in absolute terms or relative to production or consumption in the United States, is significant."

33. In its *Views and Final Report*, the USITC ignored clear evidence that provided important context as to why the increase in subject imports from China and India could not be considered significant in any economically meaningful sense. Such evidence included, *inter alia*, substantial evidence of Corteva's decision to stop selling 2,4-D acid and esters to its pre-existing larger volume customers to bolster its own production of the more lucrative 2,4-D end-use products, a decision that had nothing to do with price.

34. Given that subject imports were drawn into the U.S. market as a result of Corteva's decision to internally consume its 2,4-D acid in support of production of its own 2,4-D end-use products, the Commission's determination that the volume of subject imports was significant was unsupported by substantial evidence and otherwise not in accordance with law.

**Count Three:**     **The USITC's Conclusion Of Significant Adverse Price Effects Was Not Supported by Substantial Evidence and Was Otherwise Not In Accordance with Law**

35. Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 34.

36. Under the statute, the Commission considers possible adverse price effects from subject imports on domestic prices from several perspectives. The Commission examines whether domestic prices have been "depressed" (in other words, have domestic prices declined), whether domestic prices have been "prevented" from increasing (in other words, are increasing domestic prices lower than would have been expected giving changing costs), and whether there has been "underselling" (in other words, have subject import prices been lower than comparable domestic prices). These perspectives are different ways to approach the overarching legal question of "the effects" of subject imports on domestic prices, and whether domestic prices have been adversely affected to a "significant" degree by subject imports.

37. The statute makes explicit that the focus is on the "the effect of" the subject imports on domestic prices, not domestic prices in isolation. Thus, if domestic prices are falling for other reasons, those falling prices are not "the effect" of subject imports and cannot establish adverse price effects. The statute also makes explicit that any price depression, price suppression, or price underselling must be to a "significant" degree. Any underselling must be "significant price underselling."

38. The USITC largely ignored these statutory mandates in its analysis of whether subject imports from China and India were having adverse effects on Corteva's selling prices. As such, the USITC's conclusion of adverse price effects from 2,4-D

- 9 -

subject imports from China and India is not in accordance with law.

39. In addition, the USITC's conclusion of adverse price effects from subject 2,4-D imports from China and India is also unsupported by substantial evidence. The USITC largely ignored the fact that customers did not purchase 2,4-D on the basis of price. Moreover, there was no correlation between underselling and shifts in market share of subject imports. During the part of the POI when more instances of underselling occurred, the volume of subject imports declined while their market share remained the same. Counterintuitively, during the part of the POI when more instances of overselling occurred, the volume and market share of subject imports increased.

40. As such, the USITC's final determination was not supported by substantial evidence.

**Count Four:** **The USITC's Conclusion Of Significant Adverse Impact Was Unsupported by Substantial Evidence and Was Otherwise Not In Accordance with Law**

41. Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 40.

42. In examining the impact of the subject imports on the domestic industry, the Commission "shall evaluate all relevant economic factors which have a bearing on the state of the industry." 19 U.S.C. § 1677(7)(C)(iii). Although many factors are enumerated, no single factor is dispositive and all relevant factors are considered "within the context of the business cycle and conditions of competition that are distinctive to the affected industry." *Id*. The Commission must also examine factors other than the subject imports to ensure that it is not inappropriately attributing injury from other factors to the subject imports, thereby inflating an otherwise tangential cause of injury into one that

satisfies the statutory material injury threshold.

43. Given that Corteva withdrew from the U.S. merchant market for 2,4-D acid and esters to focus on production of its patented downstream non-subject 2,4-D end-use products, competition in the merchant market for 2,4-D acid and esters was attenuated.

44. The Commission ignored such a condition of competition and, as such, its final determination was not in accordance with law.

45. The Commission's conclusion of adverse impact from subject imports from China and India was also unsupported by substantial evidence. In concluding that Corteva's decline in merchant market financial indicators was due to subject imports, it was unreasonable for the Commission to ignore record evidence of Corteva's prohibitively high non-market price for such product.

46. As such, the USITC's final determination was unsupported by substantial evidence.

## PRAYER FOR JUDGMENT AND RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff prays that this Court enter judgment as follows:

(A)  Enter judgment in favor of Plaintiff;

(B)  Hold as unlawful the USITC's final injury determination that is the subject of this Complaint,

(C)  Remand this proceeding to the USITC with instructions to publish a revised final injury determination in conformity with the Court's decision; and

(D)  Grant Plaintiff such additional relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Daniel L. Porter

Daniel L. Porter
William C. Sjoberg

**Pillsbury Winthrop Shaw Pittman LLP**
1700 Seventeenth Street, N.W.
Washington, D.C. 20043
202-336-8140

*Counsel for Plaintiff*

Dated: July 18, 2025